IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY KATHLEEN KIRBY, | ) |
| | ) |
|       Plaintiff, | )   2:08-cv-1088 |
| v. | ) |
| | ) |
| J.C. PENNEY CORPORATION, INC., | ) |
| | ) |
|       Defendant. | ) |

**MEMORANDUM OPINION AND ORDER OF COURT**

Presently before the Court are a series of post-trial motions filed on behalf of Plaintiff, and respective responses thereto.  Specifically, pending are the following:

    a)    PLAINTIFF'S MOTION FOR EQUITABLE RELIEF, filed at Doc. # 64, and DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR EQUITABLE RELIEF, filed at Doc. # 70; and

    b)    PLAINTIFF'S MOTION FOR BACK PAY AWARD, filed at Doc. # 65, and DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR BACK PAY AWARD, filed at Doc. # 71.

The motions are ripe for disposition.

**Statement of the Case**

Plaintiff brought the present action claiming discrimination due to her race when her employment was terminated by Defendant from her position as a Custom Decorator on or about May 10, 2007.  Plaintiff, along with co-worker Geraldine Gardner, were terminated due to "disruptive behavior," specifically an argument that occurred on the premises while both were at work on May 7, 2007.  Plaintiff is Caucasian while Ms. Gardner is African-American.  Like

1

Plaintiff, Ms. Gardner was also a decorator, and both worked at Defendant's retail store in Monaca, PA.  The compensation of both was based on commissions on their respective sales. Plaintiff contended that the Defendant decided to terminate her employment along with Ms. Gardner in order to mitigate any possible claim by Gardner that her firing was racially motivated. The case was tried before a jury beginning on November 2, 2009.  On November 6, 2009, the jury found that Defendant intentionally discriminated against Plaintiff because of her race.  More particularly, the jury determined that Plaintiff's race was a motivating factor in Defendants's decision to terminate Plaintiff, and that Plaintiff proved that she would not have been terminated for her actions in the absence of the impermissible motivating factor of her race. The jury awarded Plaintiff one dollar ($1.00) in compensatory damages and also assessed one dollar ($1.00) in punitive damages against Defendant.  Plaintiff's instant motions follow the jury decision and seek various forms of equitable relief.  The Court will address each motion *seriatim*.

## Discussion

The Third Circuit Court of Appeals has described the equitable remedies that can be awarded to a Title VII plaintiff as follows:

> Title VII provides broad equitable discretion, which courts must exercise in light of the large objectives of the Act.  The primary objective of Title VII is the elimination of discrimination in the workplace.  A central purpose of Title VII relief is to make persons whole for injuries suffered on account of unlawful employment discrimination and to restore the plaintiff as fully as possible to the position he otherwise would have been in absent discrimination.

*Gunby v. Pennsylvania Elec. Co.*, 840 F.2d 1108, 1122 (3d Cir.1988) (internal quotation marks and citations omitted).

1. <u>Plaintiff's Motion for Equitable Relief (Doc. # 64)</u>

Plaintiff's Motion for Equitable Relief (Doc. # 64) seeks equitable relief in the form of an order directed to Defendant to reinstate Plaintiff or alternatively, to award front pay to Plaintiff. Additionally, Plaintiff seeks an order that Defendant expunge all adverse material concerning her discharge from her personnel records, and an order enjoining Defendant from retaliating against her upon her return to work. Doc. # 64.

As Plaintiff correctly points out and Defendant acknowledges, normally in an employment discrimination case where a plaintiff has been terminated, a court may consider reinstatement of the plaintiff to the position from which she was terminated. Defendant does not oppose reinstatement. Likewise and appropriately so, Defendant does not oppose expunging all adverse material with respect to the termination from the personnel file of Plaintiff.

Plaintiff further seeks an injunction against Defendant to prohibit any future retaliation upon her return to work. Doc. # 64 at ¶ 4. A court may order an injunction against future or continued discrimination. 42 U.S.C. § 2000e-5(g). The issuance of an injunction rests in the sound discretion of the Court. *See e.g., Carter v. Gallagher*, 452 F.2d 315, 324 (8th Cir. 1971), *cert. denied*, 406 U.S. 950, 92 S.Ct. 2045 (1972). A determination of whether injunctive relief is appropriate hinges on a balance of various equities between the parties, and the result must be consistent with purposes of Title VII and fundamental concepts of fairness. *Kamberos v. GTE Automatic Elec., Inc.*, 603 F.2d 598 (7th Cir. 1979), *cert. denied* 102 S.Ct. 612, 454 U.S. 1060 (1981).

In this case, Plaintiff has not referenced any specific concern or fear of potential future retaliation. There is no evidence that Plaintiff anticipates being subjected to pervasive animus

upon her return to the workplace that would require relief, nor any evidence beyond the mere possibility or conjecture that Defendant may engage in discrimination in the future.  *Cf. Walton v. Cowin Equipment Co., Inc.*, 774 F.Supp. 1343 (N.D.Ala.1991), *affirmed* 974 F.2d 1348 (11th Cir. 1992)(absent any evidence of broad-based or pervasive racial discrimination by employer in workplace, black employee was not entitled to injunctive relief against potential future racially discriminatory acts by employer, although employee did show that employer had violated Title VII with respect to her pay).  In fact, those who made the decision to terminate Plaintiff are based in Texas, as opposed to Pennsylvania where Plaintiff works.  Further, in the future event that Plaintiff believes she has been subjected to retaliation as a result of her success in this action, the resulting injuries, if proven, would be adequately remedied through the enforcement mechanisms available to her under Title VII.

For the foregoing reasons, Plaintiff's motion will be granted in part and denied in part.  An appropriate order follows.

2.  Plaintiff's Motion for Back Pay Award (Doc. # 65)

As Plaintiff has pointed out, the Supreme Court laid out the basic standards for awarding back pay in *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362 (1975).  That opinion clarified that in cases of unlawful discrimination, "back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination."  *Id.* at 421.  Despite its equitable nature, back pay is therefore "a presumptive entitlement of a plaintiff who successfully prosecutes an employment discrimination

case." *Thurman v. Yellow Freight Systs., Inc.*, 90 F.3d 1160, 1171 (6th Cir.1996). The Court agrees with Plaintiff that an award of back pay is appropriate here.

Plaintiff moves for an award of back pay from May 10, 2007 (the date of her termination), until November 6, 2009 (the date of the jury verdict). Specifically, Plaintiff proposes a total back pay wage loss of $53,554.11, based upon a calculation using her wage statement from 2006, the last calendar year completed by Plaintiff in the employ of Defendant. Doc. # 65. Plaintiff's employment income in 2006 was $26,991.98. Doc. # 65 at Exhibit A. Plaintiff's income from Defendant between January 1, 2007, and her termination date, May 10, 2007, was $9,350.94. *Id.* at Exhibit B. Plaintiff proposes her 2006 wages as a base number for each year, and calculates her back pay wage loss as the difference between that which she earned in 2006 reduced by her earned income in 2007, 2008, and 2009. *Id.* From that formula, Plaintiff calculates as follows:

|  | **2007** | **2008** | **2009 (10 mos)** |
|---|---|---|---|
| 2006 wages | $ 26,991.98 | $ 26,991.98 | $ 22,493.30[1] |
| Income earned | (-) $9,350.94 | (-) $7,664.53 | (-) $5,907.68 |
| Back pay wage loss | $ 17,641.04 | $ 19,327.45 | $ 16,585.62 |

From this calculation, Plaintiff claims a total back pay wage loss of $53,554.11. *Id.* at Exhibits A - G.

Plaintiff further claims a loss of 401K contributions between 2007 and 2009. At the time her employment was terminated, she was participating in and receiving a matching contribution

---

[1] Plaintiff derives the 2009 baseline wage figure by using the monthly earned income rate from 2006, $2,249.33, multiplied by ten (10) months, to account for the period from January through the end of October, 2009.

from Defendant of six percent (6%) of her wages into her 401K account which was also lost. In her subsequent employment in 2008 and 2009, Plaintiff received no matching contributions from her employers. *Id.* at Exhibits D and G. The following calculation reflects application of Plaintiff's former matching contribution percentage to her back pay wage loss for the years 2007 - 2009:

|  | 2007 | 2008 | 2009 |
|---|---|---|---|
| Back wage pay loss | $17,641.04 | $19,327.45 | $16,585.62 |
| Matching percentage | 6% | 6% | 6% |
| Contribution loss | $1,058.46 | $1,159.47 | $995.14 |

Doc. # 65. From these figures, Plaintiff claims entitlement to a loss of matching contributions in the amount of $3,213.07 for the period between the date of her termination and October 30, 2009. *Id.* Based on Plaintiff's calculations methodology she seeks an award of back pay and lost 401K matching contributions in the total amount of $56,767.18.

Defendant objects on the basis that following Plaintiff's termination, throughout 2007, 2008, and 2009, were periods of economic downturn with declining sales and that the commissions paid to all custom decorators, and more particularly those in the Monaca studio where Plaintiff was previously employed, were demonstrably lower in 2007 - 2009, as compared to 2006. Doc. # 71. Defendant contends that any back pay award should be reduced commensurate to the percentage decline in total annual custom decorating sales in the Monaca store.

While the sales figures recited by Defendant clearly demonstrate a continuing decline in sales beginning in 2007 and continuing through 2009, Defendant's objection to a calculation of

back pay based upon Plaintiff's 2006 income fails both factually and as a matter of law. On May 10, 2007, Plaintiff and Geraldine Gardner were the two custom decorators at the Monaca studio. Upon their termination, the studio had no decorators. In the course of discovery it was revealed that the Monaca studio did not immediately replace either of the two decorators following the termination decision. *See* Doc. # 72, Plaintiff's Reply Brief. In the interim, other decorators from nearby studios rotated through to provide customer services at Monaca. It was not until March 25, 2008, that an individual custom decorator was hired to work the Monaca studio. *Id.* Even at that point, the hire was a single decorator working in a studio where two decorators had previously worked. At a minimum, it appears that a decline in sales revenue at the Monaca studio for the remainder of 2007 and into 2008 may well have been due in part to Defendant's personnel staffing decisions at the Monaca studio in the wake of the employment termination of Plaintiff and Ms. Gardner.

      The Court of Appeals for the Third Circuit has previously considered the argument that Defendant now advances as to whether downward economic pressures on sales commissions of other employees during the operative back pay period can be a basis to adjust a plaintiff's base year salary figure, and it has held against the employer. *See Durham Life Insurance Co. v. Evans*, 166 F.3d 139 (3d. Cir. 1999); *Goss v. Exxon Office Systems Co.*, 747 F.2d 885 (3d Cir. 1984). The Court noted that back pay may be awarded even if an exact dollar calculation is impossible. *Durham Life Ins.*, 166 F.3d at 156 (citing *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 880 (6th Cir.1991). In the context of commissions-based back pay, a court essentially has to estimate what a claimant's earnings would have been without discrimination, and in so doing, uncertainties are resolved against a discriminating employer. *Id.* (citations omitted); *see*

*also Gross*, 747 F.2d at 889 ("the risk of lack of certainty with respect to projections of lost income must be borne by the wrongdoer, not the victim.")

     Accordingly, Plaintiff's request for an award of back pay calculated through application of the methodology proposed will be granted. An appropriate order follows.


                                            McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARY KATHLEEN KIRBY,** | ) | |
| | ) | |
| Plaintiff, | ) | 2: 08-cv-1088 |
| | ) | |
| v. | ) | |
| | ) | |
| **J.C. PENNEY CORPORATION, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER OF COURT

AND NOW, this 11h day of December, 2009, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, and DECREED** as follows:

Plaintiff's MOTION FOR EQUITABLE RELIEF, Doc. # 64, is GRANTED in part and DENIED in part and Defendant shall:

1. Reinstate Plaintiff to her former full-time position as a Custom Decorator with seniority retroactive to May 10, 2007, FORTHWITH;

2. Immediately commence payment of front pay to Plaintiff, at the rate of $2,249.33 monthly (or $1,124.67 bi-weekly), for the period from November 7, 2009, until the date of her reinstatement as a full time employee;

3. Expunge from any and all of Defendant's personnel records of Plaintiff any reference to her discharge, to any discipline leading to her discharge and adverse material relating to her discharge, and specifically any and all paper or electronic files reflecting the information contained in the "Reason For Dismissal" document dated May 10, 2007 (as admitted into evidence at trial as Joint Exhibit No. 1).

It is further ORDERED that Plaintiff's request for an order enjoining Defendant from retaliating against her for her prosecution of this lawsuit is not warranted under the circumstances of this matter and is, therefore, DENIED.

It is further ORDERED that Plaintiff's MOTION FOR BACK PAY AWARD, Doc. # 65, is GRANTED. Plaintiff is awarded back pay in the total amount of $56,767.18, to be paid by Defendant forthwith.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc::  Samuel J. Cordes, Esquire
Email: scordes@ocmilaw.com

Christine T. Elzer, Esquire
Email: celzer@ocmilaw.com

Gregory M. Bair, Esquire
Email: gbair@jcpenney.com

Martin J. Saunders, Esquire
Email: saunderm@jacksonlewis.com